Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, California 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
Email: gkleiner@rinconlawllp.com

Counsel for FRED HJELMESET,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>MONTEREY PENINSULA ORTHOPAEDIC AND SPORTS MEDICINE INSTITUTE, a California Medical Corporation,<br><br>Debtor. | Case No. 18-51236 SLJ<br>Chapter 7<br>Hon. Stephen L. Johnson<br><br>**MOTION FOR AUTHORITY TO ENTER INTO ACCOUNTS RECEIVABLE COLLECTION AGREEMENT**<br><br>[No Hearing Required Unless Requested] |

Fred Hjelmeset, Trustee in Bankruptcy of the estate of the above-named Debtor, hereby moves the Court for an order authorizing him to enter into a document entitled "CompuGroup Medical Revenue Cycle Management Agreement" ("Agreement") with CompuGroup Medical, Inc., on the terms more fully set forth in the Notice and Opportunity for Hearing on Motion for Authority to Enter Into Accounts Receivable Collection Agreement ("Notice") filed herewith.

A copy of the Notice is attached hereto as **Exhibit A** and is incorporated by reference. A copy of the Agreement is attached hereto as **Exhibit B** and is incorporated by reference.

DATED: August 7, 2018          RINCON LAW LLP

                              By: */s/Gregg S. Kleiner*
                                  GREGG S. KLEINER
                                  Counsel for FRED HJELMESET,
                                  Trustee in Bankruptcy

In re

MONTEREY PENINSULA ORTHOPAEDIC
AND SPORTS MEDICINE INSTITUTE,
a California Medical Corporation,

Debtor.

Case No. 18-51236 SLJ
Chapter 7
Hon. Stephen L. Johnson

**NOTICE AND OPPORTUNITY FOR HEARING ON MOTION FOR AUTHORITY TO ENTER INTO ACCOUNTS RECEIVABLE COLLECTION AGREEMENT**

[No Hearing Required Unless Requested]

**TO CREDITORS, THE UNITED STATES TRUSTEE AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT** Fred Hjelmeset, the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Monterey Peninsula Orthopaedic and Sports Medicine Institute ("Debtor" or "Estate") has filed a motion seeking authority to enter into a document entitled "CompuGroup Medical Revenue Cycle Management Agreement" ("Agreement")[1] with CompuGroup Medical, Inc. ("CGM"). Under the provisions of the Agreement, CGM will assist the Trustee in the billing and collection of the Estate's pre-petition accounts receivable. In exchange, CGM will be compensated (i) in an amount equal to six and one-half percent (6.5%) of the payment made by the payee, plus (ii) a monthly administrative fee (discussed below). The Trustee seeks Bankruptcy Court authorization to enter into the Agreement.

**Background**

The Debtor filed a voluntary Chapter 7 petition on May 31, 2018 ("Petition Date"). Soon after the Petition Date, the Trustee was appointed to administer the assets of the Estate. According to the Debtor's sworn schedules, the Debtor estimated that on the Petition Date it had total outstanding accounts receivable of $1,717,052 and of that sum, approximately $850,000 are collectable. As of August 1, 2018, the Debtor's remaining accounts receivable had a gross value in excess of $900,000 ("Outstanding Claims"). The collection process for medical accounts receivable tends to be highly specialized and labor intensive. The obligors, typically insurance companies, are notorious for rejecting a physician's billings for many reasons. Claim rejections often require that the bills/invoices be re-coded and/or re-submitted for payment. Often, re-coding and resubmission of a bill may occur multiple times. The Outstanding Claims also include sums owed to the Debtor by private individuals.

Prior to the Petition Date, CGM acted as the Debtor's biller, in a fashion very similar to what is set forth in the Agreement. Because the Debtor's pre-petition billings were originally processed by CGM, and because CGM is intimately familiar with the Debtor's pre-petition billing practices, the Trustee has concluded that it makes the most economic sense to continue utilizing CGM as the Estate's "bill collector." The term of the Agreement runs from August 1, 2018 through July 31, 2019, but may terminate earlier in the event that CGM, in consultation with the Trustee, concludes that the Debtor's account receivable claims are substantially processed. From the Petition Date through July 31, 2018, CGM continued to process the Debtor's accounts receivable and CGM was directly compensated by the insurance carriers by payment of a commission of 6.5%. Under the pre-petition agreement the Debtor paid CGM, monthly, the greater of (i) 6.5% or $10,000, plus (ii) a software access fee of approximately $8,000 (collectively, the "Monthly Minimum Fee"). Since the filing of the bankruptcy case, CGM has assisted the Trustee in the post-petition collection of the pre-petition accounts receivable and has received, through July 31, 2018, approximately $8,500 through direct payments by the insurance carriers on roughly $130,000 in gross post-petition collections. CGM's post-petition commission through July 2018, 6.5%, only, represents a material discount to the Estate because CGM has waived the Monthly Minimum Fee during this period.

---

[1] The summary of the Agreement set forth in this Notice is for informational purposes only. In all instances, the terms of the Agreement shall control. A copy of the Agreement is attached as Exhibit B to the motion filed concurrently with this Notice. Parties who would like a copy of the Agreement should contact the undersigned.

1

**EXHIBIT A**

One of the primary differences between the Agreement and the pre-petition arrangement with CGM was that the pre-petition agreement required the Debtor to pay the Monthly Minimum Fee. Because the collections going forward, post-petition, exclusively relate to pre-petition billings and because the collections are only going to diminish as time goes by, continuing to pay the Monthly Minimum Fee made no sense post-petition. The Trustee and CGM have entered into the Agreement, which provides for CGM to continue to assist the Estate in the collection of the pre-petition receivables. Under the terms of the Agreement, CGM shall receive a fixed portion of the actual collections, 6.5% ("Compensation") plus a monthly administrative fee ("Fee"). The Fee starts on August 1, 2018 at $3,000 per month, and decreases based on the amount of the Outstanding Claims or the passage of time. Details of the Fee are set forth in footnote 2 in this Notice.[2] The Agreement expressly excludes Compensation that has been or will be paid directly to CGM by an insurance carrier. If approved by the Bankruptcy Court, CGM will continue to assist the Trustee in the collection of the Outstanding Claims and CGM will send the Trustee a monthly invoice which is due 30 calendar days after it has been issued.

The Trustee requests that the Order entered approving the relief requested in this notice provide as follows: "This Order is effective upon entry and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

**PLEASE TAKE FURTHER NOTICE THAT** Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the motion for approval of the Agreement or any request for hearing thereon.

**Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;**

**Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;**

**If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default; and**

**In the event of a timely objection or request for hearing, the initiating party will give at least seven days' written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.**

**PLEASE TAKE FURTHER NOTICE THAT** as of January 1, 2005, the United States Bankruptcy Court for the Northern District of California has adopted mandatory electronic filing. If you are not currently qualified to file papers with the Court electronically, you should consult the Court's website (www.canb.uscourts.gov).

DATED: August 7, 2018                       RINCON LAW LLP


                                            By: */s/Gregg S. Kleiner*
                                                GREGG S. KLEINER
                                                Counsel for FRED HJELMESET,
                                                Trustee in Bankruptcy

Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP, 268 Bush Street, Suite 3335, San Francisco, California 94104
Telephone No.: 415-672-5991 / Facsimile No.: 415-680-1712 /
Email: gkleiner@rinconlawllp.com

---

[2] The Fee is calculated as follows: (A) on August 1, 2018, the Debtor shall pay a $3,000 Fee until the earlier of (i) such time as the Outstanding Claims fall below $600,000 or (ii) October 31, 2018 (the "$3,000 Fee Period"); (B) on the earlier of the end of the $3,000 Fee Period or November 1, 2018, the Debtor shall pay a $2,000 Fee until the earlier (i) November 30, 2018 or (ii) such time as the Outstanding Claims fall below $300,000 (the "$2,000 Fee Period"); (C) on the earlier of the end of the $2,000 Fee Period until December 31, 2018, the Debtor shall pay a $2,000 Fee; and (D) on January 1, 2019 through July 31, 2019, the Debtor shall pay no Fee.

2

**EXHIBIT A**

## CompuGroup Medical Revenue Cycle Management Agreement

This CompuGroup Medical Revenue Cycle Management Agreement (this "Agreement") is made on July 25, 2018 and entered into by and between (i) Fred Hjelmeset ("Trustee") solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Monterey Peninsula Orthopaedic and Sports Medicine Institute ("Debtor"), Case No. 18-51236 SLJ, pending before the United States Bankruptcy Court for the Northern District of California, San Jose Division ("Bankruptcy Court") and (ii) Compugroup Medical, Inc., a Delaware corporation or its assigns ("CGM"). The Trustee and CGM are each a "Party" and collectively the "Parties." The following are the terms and conditions pursuant to which CGM shall provide the RCM Services to Trustee:

1. Services. CGM shall provide to Trustee Revenue Cycle Management Services (the "RCM Services").

2. Definitions. As used herein, the following terms have the following meanings:

    2.1. "Outstanding Claims" means the gross value of Debtor's open claims.

    2.2. "Revenue Cycle Management Services" means the following services:

    2.2.1. Standard implementation and the establishment of electronic data interface agreements between Debtor and applicable carriers;

    2.2.2. Claims submission, which means the submission (in either electronic or paper format) to governmental and private third party payors of charges, exclusions, denials and secondary claims within statutory periods;

    2.2.3. Insurance accounts receivable follow up, which means appropriate correspondence with governmental and private third party payors (including follow-up, research, and resubmission of denials), customer service (e.g., payor billing inquiries) and claims appeals;

    2.2.4. Payment posting, which means the receipt from Trustee of explanations of benefits ("EOBs") or other patient payment information (e.g., copayment information), and receipt from private third party payors of electronic remittance advices and other 835 files;

    2.2.5. Refund processing, which means posting of Debtor's refund check.

    2.2.6. Optional Services, including providing electronic patient statements, providing collection letters, and paper claims

2.3. "Term" means the period of time beginning on the Effective Date and ending on the Termination Date.

2.4. "Termination Date" means the last date CGM, in consultation with the Trustee, determines Debtor's claims are substantially processed.

3. <u>Payments from Third Party Insurance Payors and Patients</u>. All reimbursements from all governmental (including Medicare and Medicaid) payors, private third party payors, and patient payments shall be received directly by Trustee. Trustee shall promptly send all insurance correspondence and EOBs (or complete copies of these documents) to CGM. Trustee agrees to follow any control procedures implemented by CGM that are designed to ensure the proper transmission and receipt of such information.

4. <u>Term and Termination</u>. This Agreement commenced on the Petition Date. Either Party may terminate this Agreement at any time by a ninety (90) calendar day written notice to the other Party.

5. <u>Payment</u>.

- 5.1. CGM shall be paid six and one half percent (6.5%) of each claim processed, with the payment amount based upon the sums paid by the insurance carrier ("<u>Commission</u>"). Excluding Commissions paid directly to CGM by an insurance carrier, CGM shall submit a monthly invoice to the Trustee and payment is due within thirty (30) calendar days.

- 5.2. In addition to the payment terms outlined in Section 5.1, CGM shall be paid a monthly administrative fee, to be determined by the number of Outstanding Claims at the end of each month. See Section 5.2.2 – Administrative Fee Chart ("<u>Chart</u>").

5.2.1. As set forth in the Chart at Section 5.2.2, commencing:
(A) on August 1, 2018, the Debtor shall pay a $3,000 Administrative Fee until the earlier of (i) such time as the Outstanding Claims fall below $600,000 or (ii) October 31, 2018 (the "$3,000 Fee Period");
(B) on the earlier of the end of the $3,000 Fee Period or November 1, 2018, the Debtor shall pay a $2,000 Administrative Fee until the earlier (i) November 30, 2018 or (ii) such time as the Outstanding Claims fall below $300,000 (the "$2,000 Fee Period");
(C) on the earlier of the end of the $2,000 Fee Period until December 31, 2018, the Debtor shall pay a $2,000 Administrative Fee; and
(D) on January 1, 2019 through July 31, 2019, the Debtor shall pay no Administrative Fee.

Doc ID: ed69a405b2b5166bf024af2df3fe268d54b82dd0

**EXHIBIT B**

5.2.2. Chart

| Start Range | End Range | Fee Start Date | Fee Termination Date | Monthly Administrative Fee |
|---|---|---|---|---|
| 900,000 | 600,000 | 8/1/2018 | 10/31/2018 | $3,000 |
| N/A | 300,000 | N/A | 11/30/2018 | $2,000 |
| N/A | 0 | N/A | 12/31/2018 | $1,000 |
| N/A | 0 | N/A | 7/30/2019 | $0 |

    5.3. Subject to mutual agreement by and between CGM and the Trustee to perform Optional Services, any electronic patient statements, collection letters, or paper claims provided will be billed at a cost of twenty-two cents ($0.22) for the first page and ten cents ($0.10) for each additional page plus the cost of first class postage.

6. <u>Miscellaneous</u>.

    6.1. <u>No Legal Advice</u>. Trustee's use of the RCM Services in no way constitutes the provision of legal advice from CGM to Trustee.

    6.2. <u>Force Majeure</u>. CGM is not liable under this Agreement for CGM's non-performance caused by acts of war, terrorism, hurricanes, earthquakes, other acts of God or nature, strikes or other labor disputes, riots, or other acts of civil disorder or any other events, conditions or causes beyond CGM's reasonable control. Trustee expressly agrees not to contest the validity of any electronic signature because the signature is performed electronically.

7. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any dispute arising out of this Agreement, and, if necessary to effect the Bankruptcy Court's jurisdiction, by their signature to this Agreement, hereby stipulate to an order providing for such jurisdiction.

8. Neither this Agreement, nor any provision within it, shall be construed against any Party or its attorney because it was drafted in full or in part by such Party or its attorney. The Agreement shall be accordingly construed equally against all Parties. In this regard, the Parties waive any and all benefits and rights he, she, it, or they may have under California Civil Code § 1654, which provides as follows:

Doc ID: ed69a405b2b5166bf024af2df3fe268d54b82dd0

**EXHIBIT B**

Case: 18-51236    Doc# 28    Filed: 08/07/18    Entered: 08/07/18 05:21:01    Page 6 of 9

IN CASES OF UNCERTAINTY NOT REMOVED BY THE PRECEDING RULES, THE LANGUAGE OF A CONTRACT SHOULD BE INTERPRETED MOST STRONGLY AGAINST THE PARTY WHO CAUSED THE UNCERTAINTY TO EXIST.

9. This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the matters described herein, and any and all prior and contemporaneous agreements, representations, discussions, negotiations, commitments, and understandings are merged into and superseded by this Agreement. No representations, verbal or otherwise, express or implied, other than those written and contained herein have been made or relied upon by any of the Parties.

10. The Parties to this Agreement shall bear their own costs and attorney fees related to negotiation and drafting of this Agreement. In the event of any breach of this Agreement, the non-breaching Party shall be entitled to, in addition to any other amounts due or rights granted under this Agreement, an award of all reasonable costs and attorney fees incurred in pursuing the enforcement, appeal and/or collection of this Agreement.

11. The Agreement may not be modified except by a writing signed by all Parties, with specific written reference to this Agreement, and with approval of the Bankruptcy Court.

12. This Agreement shall be construed under the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws.

13. This Agreement may be executed in counterparts, and the signature pages of such counterparts may be collected. A copy of this Agreement with all collected counterparts and signature pages shall have the full force and effect of an original. A scanned image of a signature or a signature delivered by facsimile shall be effective as an original "wet ink" signature.

4

Doc ID: ed69a405b2b5166bf024af2df3fe268d54b82dd0

**EXHIBIT B**

Case: 18-51236    Doc# 28    Filed: 08/07/18    Entered: 08/07/18 05:21:01    Page 7 of 9

DATED: August 6, 2018

By:   */s/Fred Hjelmeset*
     FRED HJELMESET, Trustee

DATED: August 1, 2018     COMPUGROUP MEDICAL, INC.

By:   [signature]
     BENEDIKT BRUECKLE, Chief Executive Officer
     CEO

5

Doc ID: ed69a405b2b5166bf024af2df3fe268d54b82dd0

**EXHIBIT B**

 

| | |
|---|---|
| **TITLE** | RCM Agreement |
| **FILE NAME** | Updated Aug 3 Co...ent Agreement.pdf |
| **DOCUMENT ID** | ed69a405b2b5166bf024af2df3fe268d54b82dd0 |
| **STATUS** | ● Completed |

## Document History



**08/06/2018**
18:48:48 UTC

Sent for signature to Benedikt Brueckle (benedikt.brueckle@cgm.com) from melanie.wilhelm@cgm.com
IP: 98.172.87.122



**08/06/2018**
21:44:06 UTC

Viewed by Benedikt Brueckle (benedikt.brueckle@cgm.com)
IP: 12.244.57.74



**08/06/2018**
21:54:05 UTC

Signed by Benedikt Brueckle (benedikt.brueckle@cgm.com)
IP: 12.244.57.74

**08/06/2018**
21:54:05 UTC

The document has been completed.

**EXHIBIT B**